## TUGGLE v. BARCLAY, STINNETT & CO.

1. A bill of sale was made by C. (the defendant in execution,) to B., (one of the claimants,) to the negro woman in question, who was at that time concealed, with three other slaves of C . in a county remote from that where the transaction took place, (whither he had removed them,) and was shortly thereafter de-

livered to B. at the place of her concealment. B. then returned in company with C's agent, and another person, to the county in which himself and his ven - dor resided—the other slaves, under the exclusive control of C's agent, accom- panying them. The woman purchased by B. was levied on by *fi. fa.* against C's estate, and claimed by B. S. & Co. On the trial before the jury, the plain- tiff in execution asked a witness, what disposition was made of the slaves that were brought back and not levied on, and where they were when he last saw them; but upon the claimant's objecting to the question, the court adjudged the same to be inadmissible, and decided that it should not be answered : *Held*, that the question was *prima facis* irrelevant, and to have made a direct answer to it evidence, the plaintiff should have stated the object of the inquiry, and how he intended to affect thereby the claimant's title to the slave in question.

WRIT of error to the Circuit Court of Talladega.

On the 24th day of November, 1842, a writ of *fieri facias* was issued from the circuit court of Talladega, at the suit of the plain- tiff in error, requiring the sheriff to make of the goods and chat- tels, &c., of William Miller, Henry Carter and John W. Carter, the sum of seven hundred and forty-seven 60-100 dollars, besides eleven dollars and 56 1-4 cents, for costs. The sheriff of Tal- ladega levied this *fi. fa.* on the 3d January 1843, on a negro wo- man named Phebe, aged about twenty-two years, and a negro boy named Joe, about two years old—all as the property of John W. Carter. On the 6th February, 1843, Messrs. Barclay, Stinnett & Co. interposed a claim to Phebe, and executed a bond with surety, pursuant to the statute, in order to try the right to her. An issue was made up under the direction of the court, in which the plaintiff affirmed, and the claimants denied, that she was subject to the execution; and this issue was submitted to a jury. On the trial, the plaintiff excepted to the ruling of the court. It appears that on the 2d December, 1842, John W. Carter made a bill of sale for the woman Phebe to Barclay, one of the claim- ants. This bill of sale was executed in Talladega county, where both the vendor and the vendee resided. About Christmas of that year, Carter employed the witness, who testified to these facts, to go with Barclay into Blount county, where Phebe and three other negroes had been run and secreted by Carter, after the plaintiff in execution had obtained the judgment under which his execution issued. Witness accordingly went with Barclay, and showed him the negroes, secreted among some rocks in the

Tuggle v. Barclay, Stinnett & Co.

Warrior hills in Blount, and delivered the woman Phebe to him. Witness, Barclay and one Huey, (the latter of whom has a claim to one of the negroes now pending in the circuit court of Talladega,) returned to Talladega, and the four negroes came with them. These facts being stated, the plaintiff in execution asked witness, what disposition was made of the two negroes, which had been brought back to Talladega, but not levied on by his execution, and where they were when he last saw them. To the answering of this question, the claimants objected—their objection was sustained; and thereupon, the plaintiff excepted.

There was no evidence that claimants had any agency in bringing back the negroes not levied on, or that they exercised any control over them; but they were brought back, as stated above, by the witness as Carter's agent. After the plaintiff excepted to the refusal of the court to permit the witness to answer this question, the witness voluntarily stated that he knew nothing of what had become of the two negroes not levied on; but plaintiff's counsel asked him no further question, and said that under the influence of the decision of the court, he omitted to make other inquiries of him, answers to which would show that he had a knowledge of facts going to establish that he knew what had become of these negroes.

S. F. Rice, for the plaintiff in error. The question proposed to the witness, and which the court decided was improper, should have been answered; and the error of its rejection was not cured by its being afterwards voluntarily answered. [8 Johns. Rep. 447; 12 Johns. Rep. 320; 18 Wend. Rep. 353; Brock, et al. v. Yongue, et al. 4 Ala. Rep. 585.]

W. P. Chilton and Bowdon, for the defendant in error. If the plaintiff had desired an answer from the witness, he should have stated to the court the object of the inquiry, or have shewn, in some manner, that his question was pertinent, and intended to elicit material evidence. [8 Porter's Rep. 176; 1 Ala. Rep. 160; Chandler v. Hudson, at this term.] *Prima facie*, it was irrelevant, and is not aided by any thing that was said by the plaintiff's counsel after it was rejected. But even if the decision of the court was erroneous, the witness answered the question, and the

plaintiff might have examined him further, and cannot now allege the matter of his exception. [Oden v. Ripetoe, 4 Ala. Rep. 68.]

COLLIER, C. J.—The facts disclosed in the bill of exceptions, would warrant the inference, that the object of Carter was to place his property beyond the reach of the plaintiff's execution, by removing it to another county; but there is no proof recited in the record, which implicates the claimants, or either of them, in the consummation of such a purpose. It does not appear that the plaintiff had caused an execution to be issued upon his judgment previous to the removal of the negroes from Talladega to Blount. In fact, the inference is clear, that none had issued. This being the case, the plaintiff acquired no lien upon the slaves, and it was competent, so far as his interests were concerned, for Carter to have sold them to Barclay, or any one else, who, in good faith and for a valuable consideration, might desire to purchase them. The fairness of Barclay's purchase, and the adequacy of the consideration paid by him, seem not to have been controverted in the circuit court, so far as we can judge from the facts recited in the bill of exceptions. What object the plaintiff had in view, in inquiring what disposition had been made of the two negroes that were not sold by Carter either to Barclay or Huey, it is difficult to conjecture. It is quite immaterial, so far as the claimants' right to the negroes, now in controversy, is concerned, what has been done with them, unless the claimants had some agency in placing them beyond the reach of the plaintiff's execution; and even then, we cannot very well conceive how their title to Phebe, if valid, would be defeated.

The question, then, was *prima facie* irrelevant, and, consequently, inadmissible. To have made a direct response to it, evidence, the plaintiff should have stated the object of the inquiry, and how he intended to affect thereby, the claimants' title to the slave in question. What was said afterwards by the plaintiffs' counsel, was not intended to show the pertinency of the rejected evidence, but it was a mere declaration, that if he had been allowed to pursue his own course of examination, he would have shown a state of facts from which it was inferable, that the witness knew where the two negroes were, about which he inquired. Concede that this had been shown by a direct answer, and still, in the posture in which the case is presented, the evidence was

inadmissible, for the reason already stated, that it was entirely without the issue submitted to the jury. If the plaintiff proposed to prove that the claimants, not only had possession of Phebe, but the other two negroes, also, and from the inadequacy of consideration, or other cause, the transaction by which he acquired the former, was fraudulent, he should have so stated it to the court. In the absence of such a statement, or some other basis on which to rest the question, its rejection was entirely proper.

We need not consider whether the voluntary answer, made by the witness, would have cured the error, if any; since, as we have seen, the court decided the law correctly. The judgment is, consequently, affirmed.